UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.  : | Case No. 22-cr-168 (CKK) |
| : | |
| HAROLD AUGOSTUS STONE : | |
| : | |
| Defendant.  : | |

**GOVERNMENT'S MEMORANDUM
IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant Harold Augostus Stone (hereinafter "the defendant") be detained pending trial.  The government seeks the defendant's detention pursuant to 18 U.S.C. § 3142(f)(1)(C) (Controlled Substances Act offense), 18 U.S.C. § 3142(f)(1)(D) (recidivist), 18 U.S.C. § 3142(f)(1)(E) (offense involving a firearm), as well as 18 U.S.C. § 3142(d)(1)(A)(iii) (probation or parole).  The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

## I. Introduction

The defendant is charged by indictment with one count of Unlawful Possession with Intent to Distribute 40 Grams or More of Fentanyl, pursuant to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi) and one count of Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense, pursuant to 18 U.S.C. § 924(c)(1).  Based on the defendant's conduct and

1

characteristics, the government respectfully requests that the Court hold the defendant without bond pending trial to ensure the safety of the community.

## II. Legal Authority and Argument

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Further, the government may proceed by way of proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device, and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *Smith*, 79 F.3d at 1210, *see also Williams*, 798 F. Supp. at 36.

There are four factors that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). The facts and circumstances in this case require the Court to conclude that there is no condition or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1).

Additionally, due to the charges in the indictment, there is a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the defendant's appearance in this

case and otherwise protect the community.  *See* 18 U.S.C. §§ 3142(e)(3)(A), (e)(3)(B).  The government respectfully submits that the defendant cannot rebut this presumption based on his history and characteristics and his conduct.  Accordingly, because there is no condition or combination of conditions that would assure the defendant's appearance in Court nor the safety of the community, the defendant should be detained pending trial.

A. **Nature and Circumstances of the Offenses Charged**

The first factor under 18 U.S.C. § 3142(g) – the nature and circumstances of the offense charged – clearly weighs in favor of detention.  The defendant was arrested by United States Park Police on May 11, 2022, in the vicinity of the 1200 block of M Street, NW, in Washington, DC. After observing the defendant engage in suspicious behavior consistent with possession of a firearm, law enforcement attempted to engage the defendant.  The defendant fled in the opposite direction and entered a vehicle in an apparent attempt to flee from law enforcement.  U.S. Park Police officers believed that the defendant was armed and, during a pat down, felt an object that was immediately recognized to be a firearm inside of a satchel that was strung across the defendant's shoulder.  The defendant was found to be in possession of a Polymer 80 9mm handgun.  The handgun was loaded with an extended magazine, which contained 24 rounds of ammunition.  Importantly, the handgun also had affixed to its back a selector switch – or "giggle switch" – which converts a semi-automatic handgun to a fully automatic weapon.

Law enforcement conducted a search incident to arrest and found a large quantity of narcotics on the defendant's person.  Located near the front groin area inside of the defendant's underwear was a clear plastic bag containing the following:

- 1 clear plastic knotted twist containing 15.5 grams (with packaging) of a white powder substance.

3

- 1 clear plastic knotted twist containing 3.3 grams (with packaging) of a white powder substance.
- 1 clear plastic knotted twist containing 12.9 grams (with packaging) of a white powder substance.
- 1 clear plastic knotted twist containing 6.7 grams (with packaging) of a hard white solid and powdery substance.
- 1 clear plastic knotted twist containing 37.0 (with packaging) grams of a hard white solid and powdery substance.
- 1 clear plastic knotted twist containing 22.8 (with packaging) grams of a white rock like substance.

A portion of all six twists was field tested by U.S. Park Police, and all field tests indicated a positive color reaction for the presence of cocaine base. Further field tests by MPD revealed that all substances were also positive for fentanyl. The 22.8 grams of white rock like substance were consistent in appearance to crack cocaine. The 6.7 grams and 37.0 grams of hard white solid and powdery substance were consistent in appearance to cocaine cut directly from the brick. The 15.5 grams, 3.3 grams, and 12.9 grams of white powder substance were consistent in appearance to cocaine powder. The cumulative total weight of the recovered narcotics was 98.2 grams. This amount has an approximate street resale value of $9,800. Law enforcement also recovered a total of $3,242 in U.S. currency from the defendant's person.

The defendant has been charged by indictment with possession with intent to distribute a controlled substance, specifically fentanyl – a highly dangerous narcotic. The sheer volume of narcotics that the defendant possessed – approximately 98 grams with a resale value of approximately $9,800 – is an amount that a distributor would possess, and has a capacity to inflict serious bodily harm or death upon multiple individuals. Additionally, the manner in which the narcotics had been separated and stored reflects that the defendant intended to sell the drugs to buyers. Specifically, the narcotics were separated into six knotted twists containing different substances and drug weights, all concealed inside a plastic bag. The manner of concealment –

hiding the narcotics in his underwear – demonstrates that the defendant knew he was carrying a controlled substance that needed to be hidden from plain view, while the packaging of the narcotics reflects that he was equipped and prepared to distribute that substance to potential buyers. In short, the nature of the charge, the fact that it involves fentanyl, the quantity of the substance involved, the large amount of U.S. currency retrieved, and the manner of concealment suggest that the defendant knew quite well the dangerousness of his product, and should leave this Court no doubt that the defendant poses a risk to the community if released.

The defendant was also found to be in possession of a firearm during the commission of a drug trafficking offense. Significantly, the firearm was holding an extended magazine with a 31-round capacity, equipped with 24 rounds of ammunition, and modified with a converter switch affixed to the back of the handgun. These characteristics are reflective of a desire by the defendant to enhance the dangerousness of the firearm, as the increased magazine capacity would allow for more rounds of ammunition to be discharged prior to reloading, while the converter switch would convert the weapon into a machine gun by allowing the defendant to fire nearly three dozen rounds with a single trigger pull.

Put simply, this case involves a serious controlled substance offense involving a large amount of a deadly narcotic – fentanyl – and a particularly dangerous firearm. The circumstances surrounding the charged offense, including the weight and packaging of the narcotics, approximately $3,200 in U.S. Currency, and the presence of a firearm with an extended magazine and converter switch, indicate that the defendant was engaged in activities that were inherently dangerous and presented a serious risk to the community. The nature and circumstances of these offenses weighs heavily in favor of detention.

B.      **Weight of the Evidence Against the Defendant**

The second factor to be considered – the weight of the evidence – also clearly weighs in favor of detention.  The evidence against the defendant is quite strong, given that he was found with a substantial quantity of narcotics as well as a dangerous firearm on his person.  The weight and packaging of the narcotics make it far more likely that the defendant possessed the narcotics with the intent to distribute, as opposed to possession for personal use or any other reason.  And the firearm, which had been equipped with an extended magazine and modified with a converter switch, was recovered by law enforcement from a satchel that was strung across the defendant's shoulder.  Law enforcement agents also witnessed the defendant adjust and protect his satchel before he was stopped, which suggests that he was aware that he was carrying a deadly weapon.  Each of these evidentiary points is reflective of the defendant's guilt and weigh in favor of detention.

C.      **Defendants' History and Characteristics**

The third factor – the history and characteristics of the defendant – similarly weighs in favor of detention.  This Court considers, among other factors, "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history."  *United States v. Taylor*, 289 F. Supp. 3d 55, 69 (D.D.C. 2018).  This Court in considering pretrial detention "may also consider prior arrests or charges brought against a defendant, even when those actions did not result in convictions."  *See id.* at 70.

The defendant has a very troubling criminal history.  The defendant has three prior convictions, including two prior felony convictions.  Most significantly, he was convicted in 1996

6

in D.C. Superior Court of First-Degree Murder while Armed, Possession of a Firearm During a Crime of Violence, and Carrying a Pistol Without a License.   In that case, the defendant, who was at the time a member of a drug syndicate in Washington, DC, was found guilty of murder when he shot and killed another individual.  The murder was carried out in retaliation for a robbery committed against the principal supplier of crack cocaine for the drug syndicate.  For these crimes, the defendant was originally sentenced to consecutive sentences aggregating to 35 years to life, followed by Supervised Probation for five years.  While in jail, the defendant was convicted of prisoner possession of marijuana and sentenced to four additional months of confinement.  Then in 1998, the defendant was again convicted, in federal court, for Assault with a Dangerous Weapon with Intent to do Bodily Harm, and sentenced to 46 months confinement and 2 years of Supervised Release.  The defendant's sentence was reduced under D.C.'s Incarceration Reduction Amendment Act ("IRAA"), and he was released from custody on July 24, 2020 after serving more than 25 years in prison.  He is currently on both federal and state supervised release, until July 23, 2022 and July 23, 2025, respectively.

The defendant's prior criminal history, including his murder conviction, provide a sufficient basis on its own to justify his detention pending trial in this matter.  His multiple convictions, including for criminal activity he carried out while in jail for other crimes, are indicative of a serious safety risk to the community if he is allowed to be released pending trial.  This concern is only heightened when considering the defendant's conduct while on Supervised Release.  The defendant's federal and state supervision officers both request that the defendant be held pending charges in this case, and detail a concerning trend of drug use while on Supervised Release.  The defendant's federal Probation Officer stated that the defendant tested positive for

marijuana on December 15, 2021 and positive for marijuana and cocaine on April 13, 2022. The Probation Officer reported that the defendant attempt to adulterate the April 13, 2022 drug test by bringing in a bottle pre-filled with urine. The defendant's state Supervision Officer noted that the defendant has maintained partial compliance with his release conditions, but indicated that he tested positive for marijuana on March 23, 2022.

The defendant's drug use and efforts to cheat testing while on supervised release provides little comfort that the defendant will comply with any combination of conditions to ensure the safety of the community and his return to court in this case. Indeed, the defendant's current arrest for possession of narcotics and a firearm took place while he was on supervision for his prior convictions. Even more disconcerting is the fact that, less than two years ago, he was released early from prison by a D.C. Superior Court judge under the IRAA. The defendant has squandered that opportunity and violated that judge's trust. Given his criminal history and repeated failure to comply with the terms of supervised release, there is no set of conditions that can provide sufficient assurance that the defendant will not pose a risk to the community through further criminal activity. The defendant's history and characteristics therefore heavily weigh in favor of detention.

    **D.**    **Danger to the Community**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention. As noted above, based on the charges in the complaint, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" where a judicial officer determines that there is probable cause to believe that the person committed the charged offense. 18 U.S.C. §§ 3142(e)(3), (e)(3)(A). Under the Bail Reform

Act, 18 U.S.C. §§ 3142 *et seq.*, "[t]he statutory language, as well as the legislative history, unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985). Its legislative history also "fully supports the conclusion that Congress intended to equate drug trafficking with danger to the community." *Strong*, 775 F.2d at 507. As noted by the D.C. Circuit:

The legislative history indicates that the rebuttable presumption covering serious drug trafficking offenses was included because:

> Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism. Furthermore, the Committee received testimony that flight to avoid prosecution is particularly high among persons charged with major drug offenses. Because of the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country, these persons have both the resources and the foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences.

*United States v. Alatishe*, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), U.S. Code Cong. & Admin. News 1984, p. 3203). Thus, in creating a presumption of pretrial detention for serious drug trafficking offenses, both the legislative history and the statutory language make clear that very "real-world" concerns lie behind the recognition of the inherent, pretrial dangers and flight risks posed by those who commit serious drug trafficking offenses.

The presumption is rebuttable and does not shift the ultimate burden of proof from the government's shoulders. But it does create a burden of *production* on the defense to submit at least some credible evidence that might purport to overcome it. And even if the defense does submit such evidence, the presumption remains as a factor that may be considered by the Court among

9

others in determining whether the defendant should be detained, and the presumption retains "evidentiary weight." *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight") (citations omitted); *United States v. Rueben*, 974 F.2d. 580, 586 (5th Cir. 1992) (the mere production of evidence [regarding flight risk for a drug offense] does not completely rebut the presumption . . . . In making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society" (citation omitted); *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir. 1991) ("Although the government retains the burden of persuasion, a defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption . . . . Once a defendant introduces rebuttal evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant. . . . *see also United States v. Jessup*, 757 F.2d 378, 382-83 (1st Cir.1985) (rejecting "bursting bubble" approach)" (internal citation omitted)); *see also United States v. Ali*, 793 F.Supp.2d 386, 388 and 388 n.2 (D.D.C. 2011) ("Even if such contrary evidence or credible proffers are offered, the presumption remains as a factor to be considered by the Court amongst others in determining whether the defendant should be detained").

The nature and seriousness of the danger to any person or the community posed by the defendant's release is grave. The defendant is alleged to have possessed a substantial amount of fentanyl, packaged and concealed in a manner reflecting that it was ready for sale and distribution. While in possession of the narcotics, the defendant also possessed a dangerous firearm, which had

10

contained an extended magazine and had been modified with a converter switch to make it a fully automatic weapon.   The fentanyl and the firearm have significant potential to cause serious bodily injury to or the death of innocent persons in the community.   The charged violations of 18 U.S.C. § 841(a)(1) and (b)(1)(B)(vi) and 18 U.S.C. § 924(c)(1) appropriately trigger a presumption of detention that is wholly unrebutted by a thorough assessment of all four relevant factors.   The defendant's extensive criminal history and conduct while on supervised release, to include his commission of the drug trafficking and firearms possession crimes while on probation, suggest that the defendant will not be able to comply with any terms of his release pending trial.   No conditions, or combination of conditions, can provide sufficient assurance that the defendant will comply with court orders and abide by appropriate release conditions to mitigate the danger posed to the public by their release.

### III.  Conclusion

The Court should grant the government's motion to detain the defendant pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By: */s/ Shaunik R. Panse*
SHAUNIK R. PANSE
Special Assistant United States Attorney
N.Y. Bar Number 4801122
United States Attorney's Office
601 D Street, N.W.
Washington, D.C.   20530
Telephone: 202-252-6820
Email: shaunik.panse2@usdoj.gov

Date: May 20, 2022